UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DANIEL G. SANDOVAL,<br><br>　　　　　　　　Petitioner,<br>　　v.<br><br>ROBERT LeGRAND, et al.,<br><br>　　　　　　　　Respondents. | Case No. 3:11-cv-00799-MMD-VPC<br><br>ORDER |

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Daniel G. Sandoval, a Nevada prisoner.

I.　　**PROCEDURAL BACKGROUND**[1]

In 2006, Sandoval was convicted, pursuant to a guilty plea, of battery with intent to commit sexual assault on a child under fourteen and willfully endangering a child as a result of child abuse. Sandoval was sentenced to life in prison with parole eligibility beginning after five years plus a consecutive term of 28-72 months.

On March 6, 2008, Sandoval's convictions were affirmed on direct appeal by the Nevada Supreme Court. Sandoval filed a federal habeas petition which was dismissed on procedural grounds. USDC Case No. 3:09-cv-00020-HDM-RAM. He then filed a state habeas petition. The state district court held an evidentiary hearing on April 30, 2010, and subsequently denied the petition on its merits. On September 14, 2011, the Nevada Supreme Court affirmed the denial of that petition.

---

[1] Except where indicated, this procedural background is derived from the exhibits filed under docket numbers 13 through 17.

On November 3, 2011, this Court received the federal habeas petition that initiated this action. After appointment of counsel, Sandoval filed a first amended petition on January 25, 2012. That was followed by a second amended petition filed on March 5, 2012.

Pursuant to respondents' motion to dismiss, this Court concluded that Ground Two of the second amended petition was unexhausted. (Dkt. no. 37.) Sandoval elected to suffer dismissal of Ground Two without prejudice. (Dkt. nos. 38-40.)

The remaining claims in the petition have been fully briefed and are now ready for a disposition on the merits.

## II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court

///

2

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 131 S.Ct.1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

The state court's factual findings are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S.Ct. at 1398. In *Pinholster*, the Court reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made," and, therefore, the record under review must be "limited to the record in existence at that same time, i.e., the record before the state court." *Id.*

///

### III. ANALYSIS OF CLAIMS

#### A. Ground One

In Ground One, Sandoval claims that he was deprived of his constitutional right to effective assistance of counsel because his counsel (1) used coercive tactics to obtain his guilty plea, (2) failed to investigate and interview potential witnesses, and (3) failed to insure that an interpreter was available at all times when communicating with him.

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). A habeas petitioner may attack the voluntary and intelligent character of a guilty plea by showing that he received ineffective assistance from counsel in connection with the entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

#### 1. Coercive tactics.

Sandoval alleges that defense counsel, Karla Butko, led him to believe that if he did not enter a guilty plea, the State would pursue a murder charge against him in relation to the accidental death of his son[2] that had occurred several years earlier. He

---

[2] While the petition refers to the child as Sandoval's son, it appears from the record that the boy was Sandoval's girlfriend's child from a prior relationship. *See, e.g.*, Dkt. no. 46-1 at 3.

further alleges that the State had no intention of pursuing such a charge and that, but for Butko's threat, he would not have entered a guilty plea to the charges in this case.

In Sandoval's first state post-conviction proceeding, the state district court addressed this clam as follows:

> [Sandoval claims] that counsel incorrectly informed [him] that if he did not accept the plea bargain then the prosecution would re-open the case involving the earlier death of a child in the household, Jesus, and potentially prosecute him for homicide of that child. Both Karla Butko and Ken Peele denied any such conversation. Instead, they were both adamant that the prior death was mentioned only in the context of trial strategy and the prospect of uncharged misconduct being admitted in the trial in the instant case. The Court finds that Sandoval's testimony to the contrary was incredible and that Butko and Peele were credible. Accordingly, that claim is denied.

(Dkt. no. 17 at 4.)

On appeal from that decision, the Nevada Supreme Court adjudicated this claim as follows:

> Sandoval claims that his trial attorney coerced him into pleading guilty. Both the attorney and Sandoval testified at the evidentiary hearing. The district court found that Sandoval's assertion that the attorney used the threat of the State pursuing charges to induce his plea to be incredible and that the attorney's disavowal of any such coercion to be convincing. We defer to the district court's determination of credibility where, as here, it is supported by substantial evidence. *Riley v. State*, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994). Accordingly, we cannot conclude that the district court abused its discretion in determining that Sandoval's plea was voluntarily entered. *Crawford v. State*, 117 Nev. 718, 721-22, 30 P.3d 1123, 1125-26 (2001).

(Dkt. no. 17-13 at 2-3.)

Although the Nevada Supreme Court did not cite specifically to federal law, the standards the court imposed were not "contrary to" clearly established Supreme Court law for the purposes § 2254(d)(1). *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (holding that state court is not required to cite Supreme Court cases, or even be aware of them, to avoid its decision being "contrary to" Supreme Court precedent). Moreover, the court's decision was not an unreasonable application of federal law or based on an unreasonable determination of the facts.

///

Sandoval has not rebutted, with clear and convincing evidence, the state court's findings with respect to his failure to prove counsel threatened him. He argues, however, that the inquiry needs to extend into whether he subjectively believed the threat existed. In this regard, he notes that testimony at the evidentiary hearing established that Butko had discussed the incident with him and that his difficulty understanding English could have prevented him from comprehending the difference between the admission of a prior bad act and the State bringing a separate charge.

For obvious reasons, this argument is a non-starter. Beyond failing to provide adequate factual support for the argument, Sandoval points to no Supreme Court authority for the proposition that a defendant's subjective belief carries significant weight in analyzing the voluntariness of a guilty plea. His argument is based on a strained construction of a footnote in *Henderson v. Morgan*, 426 U.S. 637 (1976). (Dkt. no. 46 at 7.) In *Henderson*, the Court concluded that a defendant's guilty plea was involuntary because the record demonstrated that neither the trial court nor counsel had explained the element of intent to him before he entered the plea. *Henderson*, 426 U.S. at 647. Not only does *Henderson* impose no requirement that a reviewing court consider a defendant's subjective beliefs, the focus of the case is whether the defendant received adequate notice of what he was being asked to admit. *Id.* Here, there is no dispute over whether Sandoval understood the elements of the crimes to which he entered a guilty plea. Moreover, Sandoval's subjective belief as to what counsel was telling him has no bearing on whether counsel provided ineffective assistance, which is the theory on which Ground One is based.

Because Sandoval cannot surmount the barriers to relief imposed by § 2254(d), the claim in Ground One based on alleged coercive tactics by counsel must be denied.

### 2. Failure to investigate potential witnesses.

Sandoval alleges that counsel was ineffective by failing to investigate and interview two potential witnesses — Rosa Calleros and Ana Rosa Avalos, both of whom babysat the children of the household Sandoval shared with his girlfriend, Alejandra

6

Ornelas, the mother of the victim. According to Sandoval, Calleros and Avalos would have been able to testify that they never observed any signs that the children were mistreated by Sandoval and that Ornelas' older boys were "out of control."

In Sandoval's first state post-conviction proceeding, the state district court addressed this clam as follows:

> The court finds that the testimony of Karla Butko was credible. She and Ken Peele engaged in extensive investigation in preparation for trial. Of course it is always possible to come up with something else that could have been done, but that is not the correct standard. A lawyer has a duty to undertake reasonable investigations and the court finds that Karla Butko did indeed undertake reasonable investigations.
>
> More importantly, the court notes a nearly complete failure to demonstrate that additional favorable evidence could have been uncovered. The Supreme Court has addressed the subject and given guidance. In *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370-71 (1985), the Court stated:
>
>> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.
>
> The Court finds that petitioner has failed to show that additional investigation would have yielded evidence of such import as would have persuaded him to stand trial. Indeed, the only evidence presented was that of Hector Toledano and that man's proposed testimony was known to petitioner and to his counsel when petitioner pleaded guilty. It defies logic to argue that petitioner would have refused to plead guilty if only he had known that which he did in fact know.
>
> The court finds that petitioner bears the burden of proving the truth of his allegation that his guilty plea was the product of ineffective assistance of counsel. *See Means v. State*, 120 Nev. 1001, 103 P.2d 25

7

> (2004). He must prove his case by a preponderance of the evidence. *Id.* Upon consideration of the evidence, and the credibility of the witnesses, the court is not persuaded that counsel's investigation was unreasonable or that additional investigation would have altered the advice of counsel or the decision of the petitioner.

(Dkt. no. 17 at 3-4.)

On appeal from that decision, the Nevada Supreme Court adjudicated this claim as follows:

> Sandoval claims that his trial attorney was ineffective for failing to thoroughly investigate his case. . . . Not only did the district court find that the attorney's testimony regarding the extensive preparation she undertook to be more convincing that Sandoval's assertions to the contrary, but it also noted Sandoval's failure to demonstrate that any new evidence would have changed his decision to plead guilty. . . . We therefore conclude that Sandoval failed to meet his burden of proving that counsel's performance was deficient or that, but for counsel's allegedly deficient performance, he would not have pleaded guilty and would have insisted on proceeding with the trial. *See Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996); *Hill v. Lockhart*, 47 U.S. 52, 58-59 (1985).

(Dkt. no. 17-13 at 3.)

The Nevada Supreme Court applied the correct federal law standard in adjudicating this claim. Sandoval has made no showing that the Nevada Supreme Court's decision was an unreasonable application of that standard or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Because Sandoval cannot surmount the barriers to relief imposed by § 2254(d), the claim in Ground One based on counsel's alleged failure to investigate witnesses must be denied.

### 3.     Failure to provide an interpreter.

Sandoval alleges that an interpreter was not present when he met with counsel to discuss his case. He further alleges that, although an interpreter was present when he entered his plea in court, an interpreter was not present the day before when he discussed the agreement with counsel and signed it.

Sandoval did not raise this claim in the lower court in his state post-conviction proceeding, but did present it on appeal to the Nevada Supreme Court as a ground for

1  vacating his guilty plea. (Dkt. no. 17-10 at 26-27.) The Nevada Supreme Court
2  addressed the claim as follows:

> [Sandoval's] assertions that counsel failed to provide an interpreter or that he could not effectively communicate with her in English are belied by the record. We therefore conclude that Sandoval failed to meet his burden of proving that counsel's performance was deficient or that, but for counsel's allegedly deficient performance, he would not have pleaded guilty and would have insisted on proceeding with the trial. *See Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996); *Hill v. Lockhart*, 47 U.S. 52, 58-59 (1985).

(Dkt. no. 17-13 at 3.)

Here again, the Nevada Supreme Court applied the correct federal law standard in adjudicating this claim and Sandoval has made no showing that the Nevada Supreme Court's decision was an unreasonable application of that standard or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Because Sandoval cannot surmount the barriers to relief imposed by § 2254(d), the claim in Ground One based on counsel's alleged failure to provide an interpreter must be denied.

### B.  Ground Three

In Ground Three, Sandoval claims that the state court's imposition of lifetime supervision violates the Double Jeopardy Clause and constitutes cruel and unusual punishment. He advances three theories to support his claim: (1) The imposition of lifetime supervision is an enhancement of his sentence that implicates his right to a jury determination. (2) The imposition of parole conditions and lifetime supervision "subjects him to double punishment for the same offense." (3) The travel restrictions required by the lifetime supervision statute infringe on his right to travel.

Sandoval presented each of these three theories to the Nevada Supreme Court on direct appeal. (Dkt. no. 15-18 at 12-16.) The Nevada Supreme Court addressed them as follows:

> Gonzales-Sandoval next argues that the imposition of lifetime supervision is unconstitutional for a host of reasons. He first contends that lifetime supervision is unconstitutional under *Blakely v. Washington* [Fn:

542 U.S. 296 (2004)] because it functions as a sentencing enhancement, which must be presented to and found by a jury, unless waived by the defendant. Lifetime supervision, however, does not increase the maximum possible sentence based on additional facts not found by a jury or admitted by a defendant. [Fn: *See id.* at 303; *Apprendi v. New Jersey*, 530 U.S. 466 (2000).] Rather, lifetime supervision is a mandatory special sentence imposed upon all sex offenders upon release after the expiration of the offender's prison term or parole or probationary period. [Fn: *Palmer v. State*, 118 Nev. 823, 827, 59 P.2d 1192, 1194 (2002).] Consequently, we conclude that Gonzales-Sandoval's argument lacks merit.

Gonzales-Sandoval next argues that should he be paroled, subjecting him to the parole conditions for sexual offenders [Fn: See NRS 213.1245; 213.2155.] and lifetime supervision violates double jeopardy principles. However, lifetime supervision was enacted by the legislature and codified in NRS 176.0931. Even assuming, without deciding, that NRS 176.0931 provides a cumulative punishment for the same offense, "the question of whether double jeopardy is violated by cumulative sentences for the same offense depends solely on the legislature's intent in authorizing such sentences." [Fn: *Talancon v. State*, 102 Nev. 294, 298-99, 712 P.2d 764, 767 (1986).] By virtue of the fact that NRS 176.0931 was enacted by the legislature, it is clear that the legislature intended that a defendant convicted of a sexual offense be subjected to certain conditions if paroled and lifetime supervision. Therefore, we reject Gonzales-Sandoval's argument.

Finally, Gonzales-Sandoval contends that his sentence of lifetime supervision unconstitutionally restricts his rights to travel and free speech. However, the specific conditions of Gonzales-Sandoval's lifetime supervision will not be determined until after a hearing conducted just prior to parole, if indeed he is ever paroled. [Fn: *Johnson v. State*, 123 Nev. ___, ___, 159 P.3d 1096, 1098 (2007).] We decline to speculate upon the effect of conditions not yet defined or that may never materialize.

(Dkt. no. 16 at 4-6.)

With respect to the Nevada Supreme Court's decision on the latter two issues, Sandoval cites no Supreme Court case, and this court's search reveals no case, that would provide the basis for relief under § 2254(d)(1). *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (noting that if Supreme Court "cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law"). He also fails to establish that either decision was based on an unreasonable determination of the facts.

With respect to the *Apprendi* issue, Sandoval argues that the Nevada Supreme Court's decision is wrong because the lifetime supervision term "comes from a separate statute and requires a specific factual predicate." (Dkt. 46 at 13.) He argues that the

10

existence of a "sexual offense" is a triggering fact that must be pleaded by the State and either admitted by the defendant when entering a guilty plea or found by a jury beyond a reasonable doubt.

As respondents point out, however, battery with intent to commit sexual assault on a child under fourteen (i.e., a violation of NRS § 200.400) was specifically included as "sexual offense" under the lifetime supervision statute when Sandoval entered his guilty plea to that crime. *See* NRS § 176.0931. Under Nevada law, the state court could impose the lifetime supervision requirement based solely on facts admitted by Sandoval, without the need to make any additional findings. Thus, the state court did not contravene *Apprendi/Blakely* by doing so. *See Blakely*, 542 U.S. at 303-04.

Section 2254(d)(1) precludes habeas relief with respect to Ground Three.

## IV.     CONCLUSION

For the reasons set forth above, Sandoval's petition for habeas relief is denied.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

///

1  Having reviewed its determinations and rulings in adjudicating Sandoval's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Sandoval's habeas claims.

It is therefore ordered that petitioner's petition for writ of habeas corpus (dkt. no. 23) is denied. The Clerk shall enter judgment accordingly.

It is further ordered that a certificate of appealability is denied.

DATED THIS 21st day of August 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE